UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELA CORTEZ SANDOVAL, | No.  2:21-cv-1134-TLN-KJN |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS |
| v. | (ECF Nos. 18, 20.) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits and Supplemental Security Income.[1]  In her summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred in crafting her residual functional capacity because:  (A) no physician's opinion expressed the exact physical limitations adopted; and (B) the ALJ found persuasive the psychological opinions but ignored certain mental limitations expressed therein.  The Commissioner opposed and filed a cross–motion for summary judgment.

For the reasons that follow, the court RECOMMENDS plaintiff's motion for summary judgment be denied, the Commissioner's cross-motion be granted, and the final decision of the Commissioner be affirmed.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) for the entry of findings and recommendations reviewable by the assigned district judge.  See Local Rule 304.

1

# I.      RELEVANT LAW

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) (Title II); 1382c(a)(3) (Title XVI).  An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**:  Is the claimant capable of performing past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
> **Step five**:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4) (Title II); 416.920(a)(4) (Title XVI).  The burden of proof rests with the claimant through step four, and with the Commissioner at step five.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence."  Id. at 1154.  Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion.  Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018).  However, the court may review only the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely.  Id.  "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Ford, 950 F.3d at 1154.  Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld."  Id.  Further, the court may not reverse the ALJ's decision on account of harmless error.  Id.

2

II.      **BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**

In April of 2018, plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging an onset date of December 13, 2017.  (Administrative Transcript ("AT") 261-64.)  Plaintiff claimed disability due to "Fibromyalgia; Gout; Anxiety; Bipolar Disorder; PTSD; Back Condition; Borderline Personality Disorder; Manic Depression; Insomnia; and Diabetes."  (See AT 107.)  Plaintiff's applications were denied initially and upon reconsideration, and she sought review of these denials with an ALJ.  (AT 135-36, 175-76, 201.)  At a January 2019 hearing, plaintiff testified about her conditions, and a vocational expert ("VE") testified regarding the ability of a person with impairments found by the ALJ to perform various jobs.  (AT 59-83.)

On April 15, 2019, the ALJ issued a decision determining plaintiff was not disabled.  (AT 21-32.)  As an initial matter, the ALJ determined plaintiff met insured status through December 13, 2017.  (AT 23.)  At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since December 13, 2017.  (Id.)  At step two, the ALJ determined plaintiff had the following severe impairments: borderline personality disorder; anxiety disorder; depression; bipolar disorder; post-traumatic stress disorder ("PTSD"); fibromyalgia; gout; degenerative disc disease of the lumbar spine; and obesity.  (AT 24.)  At step three, the ALJ determined plaintiff's impairments did not meet or medically equal the severity of an impairment listed in Appendix 1.  (Id., citing 20 C.F.R. Part 404, Subpart P, Appendix 1).  The ALJ considered plaintiff's mental impairments under the paragraph B framework, citing to various medical records and finding she was "moderately" limited in each of the four categories.  (See AT 24-26.)

The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform a light work, except she:

> can only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs[;] can never climb ladders, ropes, or scaffolds[;] must avoid concentrated exposure to extreme cold, wetness, humidity, and hazards, which are defined as operational control of dangerous moving machinery and unprotected heights[;] is limited to simple, routine, and repetitive tasks[;] is limited to work in a low-stress job, which is defined as requiring only occasional decision making and having only occasional changes in the work setting[;] is also limited to only occasional face-to-face interaction with the public.

(AT 26.)  In crafting this RFC, the ALJ stated he considered plaintiff's symptoms alongside the medical evidence and opinions of the reviewing doctors.  (AT 26-30.)  The ALJ noted plaintiff's symptom testimony, and considered that testimony alongside her treatment regimen, daily activities, and conservative course of care.  (AT 27-28.)  The ALJ also reviewed certain of plaintiff's treatment records (id.), the medical opinions expressed in the prior administrative medical findings (AT 29), and two GAF scores assigned by plaintiff's medical provider (AT 29-30).  On the issue of plaintiff's physical impairments, the ALJ found the consultants' opinions "largely persuasive," noting significant support in the record but finding that the physicians "somewhat overstate [plaintiff's] physical capacity."  (AT 29.)  On the issue of plaintiff's mental impairments, the ALJ found the consultants' opinions "persuasive" given the medical records, lack of "extended or repeated psychiatric hospitalization," and inconsistency with plaintiff's daily activities.  (Id.)  The ALJ concluded that although plaintiff was incapable of performing her past relevant work, there were jobs existing in significant numbers in the national economy she could perform.  (AT 30-31.)  These jobs included Office Helper (light exertional level, unskilled, SVP 2), Marker (light exertional level, unskilled, SVP 2); and Photocopying-Machine Operator (light exertional level, unskilled, SVP 2).  (AT 31.)  The ALJ thus determined plaintiff was not disabled.  (AT 31-31.)

Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; thereafter the parties filed cross-motions for summary judgment.  (ECF Nos. 1, 18, 20.)

**III.   ISSUES PRESENTED**

Plaintiff contends the ALJ erred in: (A) evaluating the medical opinions, evidence, and symptom testimony concerning the RFC formulation; and (B) assigning plaintiff's mental limitations in the RFC, given the psychological consultants used different terminology when assessing her impairments.  Plaintiff seeks a remand for further proceedings.  (ECF No. 18.)

The Commissioner disagrees, arguing that given the low threshold of the substantial evidence standard, the ALJ properly: (A) exercised his authority to craft the RFC and supported it with citations to the record; and (B) resolved conflicts in the psychological consultants' reports when assigning the mental limitations in the RFC.  Thus, the Commissioner contends the decision

1   as a whole is supported by substantial evidence.  (ECF No. 20.)

2   **IV.    DISCUSSION**

3      **A.  Medical Evidence, Opinions, and RFC Regarding Plaintiff's Physical Impairments**

4         Plaintiff mainly contends the ALJ improperly relied on his own lay opinions in assigning

5   certain physical limitations in her RFC.  Plaintiff notes the ALJ did not wholly rely on the

6   PAMF's in crafting the RFC because the physicians actually found plaintiff less physically-

7   restricted than what was assigned in the RFC.  Plaintiff also notes the ALJ discounted her

8   symptom testimony contending she could not perform light work.  Without a physician's opinion

9   or lay testimony to support the RFC, plaintiff contends the ALJ's foundation for the RFC is not

10  supported by substantial evidence.

11        Reviewing the decision, plaintiff accurately describes the ALJ's assessment of both the

12  PAMF opinions and subjective symptom testimony.  The ALJ found "largely persuasive" the two

13  physicians who issued opinions in the PAMFs, but found the two reviewing physicians had

14  overstated her abilities, as they had not "adequately consider[ed] [plaintiff's] subjective

15  complaints."  (Id.)  There is nothing improper in this reasoning, as the ALJ is required to consider

16  a plaintiff's subjective symptom testimony when crafting the RFC.  20 C.F.R. § 404.1513(a)(4)

17  (noting a relevant category of evidence includes statements from nonmedical sources).

18        However, the decision also discounted the more limiting aspects of plaintiff's subjective

19  symptom testimony regarding her physical impairments.  (See AT 27, final paragraph.)  In

20  evaluating a claimant's report of his or her symptoms, the Ninth Circuit has proffered a two-step

21  analysis requiring the ALJ to determine (1) whether the evidence of an impairment could

22  reasonably be expected to produce the pain or other symptoms alleged, then (2) if clear and

23  convincing evidence discounts the plaintiff's claims.  Revels v. Berryhill, 874 F.3d 648, 655 (9th

24  Cir. 2017); Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (noting the ALJ's reasons

25  for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently

26  specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a

27  claimant's testimony").  The ALJ's reasoning on this point is not faulty either, as he noted little

28  medical evidence to support plaintiff's assertions as well as the conservative course of treatment

1  from plaintiff's medical providers.  See Carmickle v. Comm'r, 533 F.3d 1155, 1161 (9th Cir.

2  2008) (noting that though a lack of medical evidence cannot form the sole basis for discounting

3  subjective symptom testimony, it is a factor that the ALJ can consider); Tommasetti v. Astrue,

4  533 F.3d 1035, 1039-40 (9th Cir. 2008) (that claimant "did not seek an aggressive treatment plan"

5  and underwent conservative treatment undermines allegations of disabling impairment).  Thus,

6  the ALJ was left to craft an RFC that took into account plaintiff's medically-determinable

7  impairments that fell somewhere between what was expressed in the PAMF's and what plaintiff

8  testified to.  This is where the medical evidence of record fills that gap.

9          As the Commissioner correctly notes, the RFC is an administrative finding formulated

10  with agency discretion.  See 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . .is

11  responsible for assessing your residual functional capacity.").  True, the formulated RFC must be

12  based on substantial evidence, but the current regulations[2] specifically include "objective medical

13  evidence" as a relevant category of evidence.  20 C.F.R. § 1513(a)(1).  The ALJ noted the

14  medical records supported plaintiff's assertions regarding existence of tenderness in the joints, but

15  found they otherwise demonstrated "few positive clinical signs, such as diminished range of

16  motion in the joints, decreased strength in the extremities, swelling, or abnormal gait, were

17  documented in the treatment records." (AT 27.)  The ALJ also noted intact motor and sensory

18  function, strong grips bilaterally, steady gait, mild bulging and foraminal stenosis, and no

19  evidence of impingements.  (Id.)  The ALJ noted plaintiff's degenerative disc disease consisted

20  primarily of medications.  (Id.)  These findings allowed the ALJ to discount the more-severe

21  aspects of plaintiff's testimony, but left for some allowance on the margins of the limitations

22  expressed in the PAMFs.  Rounds v. Comm'r, 807 F.3d 996, 1006 (9th Cir. 2015) ("The ALJ is

23

24  [2] For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific
   evidentiary weight, including controlling weight, to any medical opinion(s) or prior
25  administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including
   those from [a claimant's] medical sources."  See 20 C.F.R. § 404.1520c(a).  Instead, an ALJ is to
26  evaluate medical opinions and PAMFs by considering their "persuasiveness." § 404.1520c(a).  In
   determining how "persuasive" the opinions of a medical source or PAMF is, an ALJ must
27  consider the following factors:  supportability, consistency, treatment relationship, specialization,
28  and "other factors."  § 404.1520c(b), (c)(1)-(5).

1   responsible for translating and incorporating clinical findings into a succinct RFC.").

2          This case is dissimilar from those cited by plaintiff in her brief where courts found an

3   ALJ's RFC wholly disregarded the physicians' findings and medical evidence in order to reach a

4   desired result.  See, e.g., Tackett v. Apfel, 180 F.3d 1094, 1103 (9th Cir. 1999) (noting there was

5   "no medical evidence to support the ALJ's finding that [the plaintiff] could work through an eight

6   hour workday with breaks every two hours" in light of both the consistent medical evidence and

7   physicians' opinions indicating he could only sit for a half-hour at a time).  Instead, the ALJ

8   appropriately discounted the PAMFs more restrictive aspects regarding plaintiff's physical

9   impairments—crafting an RFC more favorable to plaintiff than found in the PAMFs—by finding

10  the PAMF's inconsistent with some of plaintiff's subjective complaints.  (AT 29.)  See 20 C.F.R.

11  § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical

12  finding(s) is with the evidence from other medical sources and nonmedical sources in the claim,

13  the more persuasive [the opinion or PAMF] will be.").  As the Commissioner argues, there is no

14  requirement that an RFC completely mirror a medical opinion.  Rounds, 807 F.3d at 1006 ("[The

15  ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

16  Thus, the ALJ did not err in crafting a light RFC with light work and other restrictions by relying

17  on the PAMFS, medical records, and symptom testimony demonstrating the severity of plaintiff's

18  physical impairments.

19          To the extent plaintiff argues the ALJ failed to cite enough evidence supporting the

20  decision, or to cite to medical records with sufficient specificity, the court finds no error.  Though

21  not all records are referenced, the ALJ adequately addressed each of plaintiff's conditions and

22  cited to portions of the record supporting the findings.  Howard ex rel. Wolff v. Barnhart, 341

23  F.3d 1006, 1012 (9th Cir. 2003)) ("[I]n interpreting the evidence and developing the record, the

24  ALJ does not need to discuss every piece of evidence.").  The undersigned is able to reference the

25  exhibits cited in the decision so as to find medical records supporting the ALJ's analysis.

26  Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) ("[A] reviewing court [is] not deprived

27  of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

28          For these reasons, the court finds the ALJ did not err in crafting plaintiff's RFC regarding

1  her physical impairments.

2      **B. ALJ's Assessment of Plaintiff's Mental Impairments and RFC Formulation**

3          Plaintiff also challenges the RFC formulation concerning her mental impairments.

4  Plaintiff notes the RFC limited her to light work with "simple, routine, and repetitive tasks[;] in a

5  low-stress job[; and] only occasional face-to-face interaction with the public . . . ."  (AT 26.)

6  However, plaintiff argues that because the ALJ based this portion of the RFC on the opinions

7  expressed in the PAMFs, and those mental-health professionals limited plaintiff to "entry level"

8  positions in a "non-public setting" (phrases not incorporated into the RFC), a conflict exists

9  between the medical evidence and the hypotheticals posed to the VE at step five.  Plaintiff

10  contends this conflict is because the jobs the VE cited were coded at the specific vocational

11  preparation ("SVP") Level 2 (requiring the ability to carry out <u>detailed</u> instructions), and plaintiff

12  contends "entry level" work corresponds with SVP Level 1 (requiring the ability to carry out

13  <u>simple one-or-two step</u> instructions).  Plaintiff also contends this is because the jobs cited by the

14  VE require <u>occasional</u> contact with the public, and plaintiff appears to argue "non-public" means

15  <u>no</u> public interaction.  On these points, the court disagrees.

16          Reviewing the relevant portions of the opinions expressed in the PAMFs, the court notes

17  these opinions are more nuanced than plaintiff contends.  In the initial application, Dr. Zukowsky

18  found plaintiff limited in her concentration, persistence, and pace to "entry-level <u>or</u> unskilled type

19  tasks." (AT 115, emphasis added).  Dr. Zukowsky also believed plaintiff could "make basic

20  decisions independently, recognize and avoid common workplace hazards, and adapt adequately

21  to ordinary workplace stressors and changes."  (AT 117.)  Dr. Amado fully concurred at the

22  reconsideration stage.  (AT 149-52.)  As the Commissioner notes, the regulations define unskilled

23  work as "work which needs little or no judgment to do simple duties that can be learned on the

24  job in a short period of time."  20 C.F.R. § 404.1568(a); <u>see also</u> SSR 00-4P, 2000 WL 1898704,

25  at *3 ("[U]nskilled work corresponds to an SVP of 1-2.").  Thus, to the extent there exists a

26  conflict or ambiguity between the psychologists use of the terms "entry-level" and "unskilled,"

27  this was for the ALJ to resolve.  <u>Ford</u>, 950 F.3d at 1154.

28          As to the alleged conflict between the psychologists use of the phrase "non-public" setting

and the RFC limitation of "occasional face-to-face interaction with the public," the court again notes additional detail expressed by Drs. Zukowsky and Amado that renders plaintiff's argument fruitless.  The PAMFs actually state plaintiff can "interact with co-workers and the public in <u>brief encounters</u>."  (AT 117, 149, emphasis added.)  The relevant regulations define "occasionally" as "occurring from very little up to one-third of the time."  SSR 83-10, 1983 WL 31251, *6.  Thus, the ALJ's resolution of any conflict or ambiguity between "non-public" and "brief encounters" was within his authority.  <u>Ford</u>, 950 F.3d at 1154.

For these reasons, the court finds no error in the ALJ's resolution of plaintiff's mental impairments, the formulation of the corresponding portions of the RFC, or the ALJ's step-five hypotheticals posed to the VE.

## V.   <u>CONCLUSION</u>

Having resolved plaintiff's claims of error, the court finds the ALJ's decision is supported by substantial evidence in the record as a whole.  <u>Ford</u>, 950 F.3d at 1148, 1154.  Accordingly, IT IS HEREBY RECOMMENDED that:

1.   Plaintiff's motion for summary judgment (ECF No. 18) be DENIED;

2.   The Commissioner's cross-motion (ECF No. 20) be GRANTED;

3.   The final decision of the Commissioner be AFFIRMED; and

4.   The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right

////

////

////

9

to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998);

Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  August 9, 2022

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

sand.1134